## HYMAN v. NEWELL ET AL.

ATTACHMENT—UNLIQUIDATED DAMAGES.

Upon compliance with the statutory requirements, an attachment may be issued by a justice of the peace in a suit to recover unliquidated damages for a breach of contract, where the contract furnishes a standard in accordance with which the damages can be made definite by proof.

*Appeal from the County Court of Arapahoe County.*

Mr. J. A. C. REYNOLDS, for appellant.

Messrs. ROGERS, CUTHBERT & ELLIS, for appellees.

THOMSON, J., delivered the opinion of the court.

This suit was begun by attachment before a justice of the peace. The appellant was plaintiff and the appellees defendants. The affidavit in attachment stated that the defendants were justly indebted to the plaintiff in a sum not exceeding $300, to wit, the sum of $150, upon a contract; and that the defendants were not residents of this state. Bond was given, the writ issued, and a debtor of the defendants garnisheed. Notices of the levy of the attachment, and of the day and hour of trial, were duly posted as required by law. The

defendants not appearing, judgment was given for the plaintiff against the garnishee, who paid the money into court. After the time for appeal had elapsed, the defendants until then having no knowledge of the judgment, upon a petition filed by them, the cause was removed by writ of certiorari to the county court of Arapahoe county, where judgment went against the plaintiff, who brings the cause here by appeal.

The merits of the controversy were not determined in the county court. The cause of action which the plaintiff sought to establish was a breach by the defendants of their contract for the sale and delivery of goods, resulting in damage to him. There was in evidence a bill of sale, executed by the defendants' agent, of 5,000 "Henry Clay Especial" cigars at $88.00 per thousand, and the plaintiff testified that, although demanded, the cigars had never been delivered. He testified that they were to be delivered to him in Denver, and also testified as to the time within which they should have been delivered. The plaintiff was not permitted to proceed further with his case; and all additional proof was excluded, on the ground that the cause of action as shown by him was not one in which an attachment was authorized by the statute; that therefore the constructive notice to the defendants of the pendency of the suit, which could be given only in case of a valid attachment, was void, and the justice was without jurisdiction of the case. Counsel took the position that the object of the statute is to restrict the use of the attachment writ to cases of indebtedness in which the amount may be clearly ascertained from the contract itself; and that in this case, the contract being for the delivery of goods, and the only claim of the plaintiff being for damages for their nondelivery, the amount of which was not ascertainable from the contract, there was no such indebtedness as the statute contemplates, and the plaintiff had no right to an attachment. It would follow, therefore, that although the affidavit alleged an indebtedness in the language of the statute, and so authorized the justice to issue the writ in the first

instance, yet when it was made to appear that the plaintiffs' claim was not an indebtedness within the meaning of the law, a dissolution of the attachment, as having been wrongfully obtained, was the necessary result; and as it was only by virtue of the attachment that the justice had jurisdiction, there having been no service of summons upon, or appearance by, the defendants, upon the dissolution of the attachment the case was at an end.

We think counsel have wholly misapprehended the meaning and purpose of the statute. The following is its language:

" If any creditor, or credible person for him, shall make and file with any justice of the peace his affidavit, setting forth that the defendant in such affidavit named is justly indebted to such creditor, in a sum of money not exceeding three hundred dollars, upon a contract *expressed* or *implied*, stating the amount of such indebtedness, as near as may be, and shall also allege any one or more of the following grounds of attachment: * * *

*Second*—That the said debtor is not a resident of this state, * * * the justice of the peace may * * * issue a writ of attachment against the personal property of the said debtor." General Statutes, 1883, sec. 2000.

It seems clear from the language employed that the legislature intended to include in the term "indebtedness" any liability arising out of a contract, whether money payable directly by its terms, or damages for its breach. The statute does not confine the remedy by attachment to cases arising upon express contract. A contract which upon its face fixes the amount recoverable, must in the nature of things be express, and counsel's definition of an indebtedness for which attachment will lie is applicable only to that kind of contract. But an attachment is allowed in cases of implied contract. Usually the amount which a party is entitled to recover upon an implied contract can be ascertained only by proof. If one employ another to work for him without any agreement as to compensation, a contract to pay the reason-

able value of the services is implied. When the services are rendered, an indebtedness from one to the other is created, but it requires evidence to ascertain the sum due. It is none the less an indebtedness because proof is necessary to fix its amount. In the case of a contract for the sale and delivery of goods, the law implies a promise on the part of the vendor, if he fails to comply with his contract, to make good to the vendee any loss he may sustain by reason of the breach. An indebtedness is created by the breach, and the measure of the indebtedness is the amount of the loss. Cases are constantly arising, each differing in some of its details from all the others, in which the law implies contracts, and in which the remedy of the aggrieved party is upon the implied contract; and in all such cases the statute allows an attachment, provided the other necessary conditions exist. That such was the legislative intent is further apparent from the language requiring the party to state in his affidavit the amount of the indebtedness "*as near as may be.*" Where the amount is fixed by the contract itself, it can be stated with exactness. The words quoted clearly contemplate cases where the amount is uncertain, and an approximation is all that is, in the first instance, possible. Of course, the statute was never intended to apply in cases where the damages are purely speculative or visionary; but wherever the contract itself furnishes a standard in accordance with which they can be made definite by proof, the case is within the statute and attachment will lie.

We are unable to see that the statute is susceptible of any other construction, and we are fortified in this opinion by the decisions of other courts, where substantially the same question was involved and the same conclusion reached. In *New Haven Saw Mill Co. v. Fowler*, 28 Conn. 103, the suit was to recover damages for the negligence of the defendants in towing a raft of logs which they had agreed to tow safely, but did not. The action was commenced by attachment. It was contended that the claim was not a debt against the defendants, but the court held that it was, and observed that

it was as proper to say of one who was under obligation to discharge some duty, or to pay damages for its nonperformance, that he was a debtor, as it would be to say the same of one who was under obligation by bond to pay a sum of money. In *Hunt v. Morris*, 4 Martin, 517, the claim was for goods contracted to be carried from New Orleans to Natchez, but which were lost and destroyed through the negligence of the defendants. On proper affidavit made, an attachment issued, which was levied upon the defendants' goods. The question was whether the claim was a debt in such sense as to entitle the plaintiff to an attachment. The court said: " It may be properly and safely laid down as a general rule, that all obligations arising from contracts, either express or implied, either for the payment of money or the delivery of goods, create a debt on the part of the obligor, for which an attachment may issue, whenever the amount may be fairly ascertained by the oath of the obligee." In *Roelofson v. Hatch*, 3 Mich. 277, the cause of action was damages for breach of contract. The Michigan attachment law authorized an attachment upon the making by the plaintiff, or some person in his behalf, of an affidavit, stating, among other things, that the defendant was indebted to the plaintiff, and specifying as near as might be the amount of the indebtedness above all legal set-offs, and that the same was due upon contract, express or implied, or upon judgment. There was an attachment in the case. The decision was that a demand arising *ex contractu*, the amount of which is susceptible of ascertainment by some standard referable to the contract itself, sufficiently certain to enable the plaintiff by affidavit to aver it " as near as may be," or a jury to find it, was a foundation of a proceeding by attachment, and the attachment was accordingly sustained. See, also, *Wilson v. Wilson*, 8 Gill, 192; *Fisher v. Consequa*, 2 Wash. C. C. 382; *Nat. Bank v. Fonda*, 65 Mich. 533.

In this case, if the evidence should establish the contract and the breach as claimed, the amount recoverable is readily susceptible of ascertainment. It is simply the excess of

value of the cigars at the place and time where and when they were to be delivered, over their contract price, less the expenses of transportation. There was evidence as to the time within which they should have been delivered. The plaintiff was asked what was the market price of these cigars in Denver at that time. An objection to the question was sustained for the reason that the plaintiff's claim, as shown by him, was not an indebtedness. The ruling was error. The claim, as far as it was proved, came within the statutory meaning of the term " indebtedness," and the proof offered was necessary to an ascertainment of the amount. The plaintiff should have been permitted to proceed with the case, and judgment rendered according to the facts. The judgment will be reversed.

*Reversed.*