## No. C-1274

**Walter Bevan Mills and Bonnie Roberts Mills v. Standard Title Insurance Co., an Arizona corporation, and Denver Abstract Co., a Colorado Corporation, d/b/a Titles, Incorporated**

(577 P.2d 756)

Decided April 24, 1978.

Rodden and Marshall, Paul B. Rodden, David T. Fisher, for petitioners.

Dawson, Nagel, Sherman & Howard, Raymond J. Turner, Kenneth B. Siegel, for respondent Standard Title Insurance Co.

James G. Martin, for amicus curiae Colorado Trial Lawyers Association

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

The plaintiffs, Walter and Bonnie Mills, appealed from a judgment in favor of the defendant, Standard Title Insurance Company (Standard), in a slander of title action. The court of appeals, 39 Colo. App. 261, 568 P.2d 79, affirmed and the Mills petitioned for a writ of certiorari which we granted. We now affirm.

The Mills and Charles Crosby were involved in a dispute over the ownership of certain mortgaged real property which had been subjected to a foreclosure sale. Both the Mills and Charles Crosby wished to redeem the property. To obtain a loan of funds for his redemption, Crosby sought a title commitment from Standard which would not reflect the Mills' right of redemption. Upon Crosby's execution of an agreement indemnifying Standard against any liability resulting from the issuance of the commitment, Standard issued the requested title commitment. The loan was made to Crosby and he redeemed.

The Mills then sued Crosby and the new mortgagee to establish the Mills' interest in the property and to obtain damages. After Crosby's death, the action was settled. In connection with the settlement a mutual release was executed, which provided:

"[E]ach of the parties hereby releases and discharges the other, their heirs and personal representatives or assigns, from all and all manner of actions

and causes of action, judgments, executions, debts, dues, claims and demands of every kind and nature whatsoever which either party ever had or now has, or which their heirs, personal representatives or assigns have now or may hereafter have, against the other party, and particularly by reason of the issues contained in Civil Action No. 3817 in the District Court in and for Pitkin County, Colorado."

The Mills subsequently brought this action against Standard for slander of title in the issuance of its title commitment and policy without noting the Mills' interest. Standard thereafter brought in the Estate of Crosby as a third party defendant, based upon the indemnity agreement signed by Crosby.

The trial court found that Crosby and Standard were joint tortfeasors, since each participated in the disparagement of the Mill's title. However, it dismissed the Mills' claim on the ground that the release of Crosby's estate also operated as a release of Standard. As stated, the court of appeals affirmed.

## I.

The Mills contend that a release of one tortfeasor does not discharge another unless the release so specifies. We approve the following statement by the court of appeals.

"The release did not reserve any right of action against Standard. Where, as here, the release is of a general nature, and there is no implicit preservation of right to continue against other tortfeasors, those other tortfeasors are also released. *Farmers Elevator Co. v. Morgan,* 172 Colo. 545, 474 P.2d 617 (1970); *Cox v. Pearl Investment Co.,* 168 Colo. 67, 450 P.2d 60 (1969).

In *Farmers Elevator Co. v. Morgan,* 172 Colo. 545, 474 P.2d 617 (1970), this court stated:

"*Cox* left intact the rule that the release of one joint tort-feasor releases all. *Cox* indicated, however, that the express intent of parties reaching an agreement to preserve the right to sue other joint tort-feasors will be given effect."

As to this and other cases not affected by the legislation about to be mentioned, we adhere to the case law of this state that, absent a manifestation of a contrary intent, a release of one joint tortfeasor releases all joint tortfeasors.

The General Assembly has changed this result with regard to releases made after July 1, 1977. Colo. Sess. Laws 1977, ch. 195, 13-50.5-105 at 810. This statute does not apply retroactively: "This act shall take effect July 1, 1977, and shall apply to events occurring on and after that date." Colo. Sess. Laws 1977, ch. 195, 13-50.5-106 at 810.

## II.

The Mills' second contention is that the objective nature of the transaction makes it clear that no release of Standard was intended. They note

that Standard was not a party to the settled action and was not referred to in the release. They also note that the tort alleged in the present case, slander of title, was not alleged in the settled action. The Mills thus contend that under the language of *Farmers Elevator Co. v. Morgan, supra,* the release should be held not to affect Standard's liability:

"[W]hen from the very nature of the transaction the intent to preserve the right to sue other tort-feasors is apparent, the intent of such agreement will be given the same effect as if it were a pure covenant not to sue."

■ The court of appeals, however, did not — and we do not — think the objective circumstances in this case showed an intent not to release. The relevant objective circumstances in *Farmers Elevator* which indicated the non-release intent were that two of the parties defendant were released while an attempt was made to continue the ongoing action as against the remaining parties defendant. Here, if Standard were not released, then the estate would be liable on the indemnity agreement for damages later recovered by Mills against Standard. Obviously, that was not the intent of the release issued to the estate. We agree with the view that the objective circumstances were not sufficient to indicate an intention not to release Standard.

## III.

■ The final argument by Mills is that extrinsic evidence should have been ruled admissible to prove their intention not to release Standard. The court of appeals ruled that extrinsic evidence, other than the objective circumstances surrounding the transaction, was not admissible to show intent. We find this to be a correct statement of the law.

In *Cox v. Pearl Investment Co.,* 168 Colo. 67, 450 P.2d 60 (1969), it was held that express language in a release could be considered in determining whether other joint tortfeasors were released. In *Cox* the release, which expressly reserved the right to sue other joint tortfeasor, was held not to have released the others. In *Farmers Elevator Co. v. Morgan, supra,* it was held that objective circumstances surrounding the transaction could be considered in determining whether there was an intent to release non-mentioned joint tortfeasors.

■ Thus there is no basis in Colorado law for the admissibility of extrinsic evidence of persons issuing a release to show intention not to release non-mentioned joint tortfeasors.

Judgment affirmed.

MR. JUSTICE CARRIGAN does not participate.